Our final case this morning is Ask Sydney v. Snap, 2024-1157. Let's wait until Closing Counsel sits down. Mr. Lund. May it please the Court, Eric Lund for Appellant Ask Sydney. Good morning, Your Honors. I want to address two points today on appeal. The first is the California Court's decision to overrule the presumption of validity in this case. And the second is what the technological improvement is in this case. So, on the first point, here we have a situation where the USPTO made a determination on 101. We then had a district court in Texas look at that same record and decide that the issue of 101 was not overcome and that the patent was presumed valid because there had not been presented any clear or convincing evidence. Then, the California Court looked at that same evidence and then made the opposite determination. And, Your Honors, the issue here is that this is not the same situation as in the Sanderling case where defense argues that the district court does not have to defer to the patent office's determination. We agree with that. But here we have a different situation where the district court in Texas already did its own independent evaluation of 101 and then the California Court made a different determination at the pleading stage. And they did so without any new evidentiary record. The only thing that was different in the California case was defense's argument about the hypothetical salesman. And our position today here is that that does not rise to a clear and convincing evidentiary standard that would overcome the presumption of validity. And so, I want to talk a little bit about what we believe would have been proper in this situation. Being that there was already a determination at the district court level by the Texas court, our position is that the California court should have considered that and should have said, come to the same conclusion that our sister court has already made the determination that at the pleading stage, this 101 issue is, although it could be right and the California court could have asked for new evidence or asked for additional argumentation, it looked at the same evidence and then made a different determination. The California court is entitled to decide its own case. And that's what we have to review. And the court found that it simply claims recite a computer implementation of the abstract concept generating and presenting images to a user to gauge the user's interest. And it used the analogy of a shoe salesman. Certainly, Your Honor. And that analogy of the hypothetical shoe salesman should have been flushed out more. We should have had the opportunity to bring in a shoe salesman and to engage in further proceedings, not at the pleading stage, as to what it is that a shoe salesman would have been determining in their mind and what exactly would have been a technological improvement here. And we're not arguing that it was not within the California court's ability to make its own independent determination. But here in this case, the evidence that it looked at is the exact same as the Texas court. And we have a conflict where no new analysis, no new factual findings have been allowed. The California court has just taken the hypothetical shoe salesman and said that rises to the level of clear and convincing evidence. And our position is that it's not. And we come to that position because there was no further analysis of what that hypothetical shoe salesman would engage in, how they would think, how that would compare to the speed of a computer. And for that reason, we believe that decision and that analogy was improper at that pleading stage. And on that point, it gets to my second point, which is what is the technological improvement here, right? And I think in some... Are these claims all software passage of information on a computer? Yes, they all integrate with a computer and that's exactly the point that I want to get to. It's an ordinary computer, right? Well, it's not an ordinary computer, Your Honor. The patent specifically said that this is a computer that is using human machine inputs made by the user to arrive at a contemporaneous and subjective feeling of a user. And I'm reading right from the patent, 786 patent in column 5. It says, in this way, both human and machine are necessary partners in the search strategy. And our position is not that this is an ordinary computer. This is a computer that has been improved by integrating the user's contemporaneous subjective desires into the decision. Do you think this claim could be performed without a computer? No, Your Honor. It could not be conformed without a computer. And the reason for that is also right here in the patent. It says, to satisfy an immediate craving, the machine is needed to help the user arrive at a recommendation quickly within less than a minute. And so that's what the heart of this invention is getting to. Well, let me ask you a hypothetical.  What if I go home and ask my wife, where does she want to go out for dinner? And she says, I don't know. And then I say, okay, how about Lido's Pizza? And she says, no way. I say, okay. No pizza. No Italian food. And then I say, okay, how about Wong Dynasty? She says, I like Wong Dynasty. But not Wong Dynasty. I say, okay. How about, and then I know another Chinese restaurant called Shanghai Taste. And I know that she likes Shanghai Taste because we've gone there 20 times before. And they also have these really good pan-fried dumplings. I say, how about Shanghai Taste? She says, yes. That's great. Let's go. Is that method something that's eligible for the patent system? Well, Your Honor, the case law is that going through this abstract human idea of coming to a decision is, the case law I think is pretty clear that that's not exactly a patentable invention. That would be an abstract idea. But here what we're saying, we're not saying that the invention is replacing that process or replacing that idea. It's improving it. It's improving the human decision making and it's doing so with the computer. I mean, it feels like, I mean, I can barely understand these claims. They're very difficult to understand. And I didn't really feel like the blue brief was very helpful in helping me understand these very hard to understand claim limitations. But as I understand the claim right now, it feels very much like it tracks what I just proposed, although it's done by a computer. And so where am I wrong with that? That is correct, Your Honor, in that it does track what you just went through. But it's an improvement to that because as the patent specification goes through, there's a process of waiting, right? And that's waits of what is liked, waits of what is not liked. In your example, you're talking about, oh, I know my wife likes this place because she likes this one particular restaurant. Here it's doing that process but at a much grander scale. It has the entire history of likes from other people, other users who may have liked, for example, a particular Chinese restaurant. The system is waiting that and then waiting similar foods into that decision making. This system is using other people's preferences as well? Yes, Your Honor. It has waits built in from a database of waits. But the invention is not using other history. It's melding it together and then taking that last important and specific part, which is the user's subjective intent in the moment. The patent talks about capturing the fleeting feelings. And so it's that melding of a system that has helped curating the restaurants that might be a possible choice and then melding that together with the user's subjective intent at the moment to come to a decision. And we're not saying that coming up with a decision is a patent, but it comes up with a decision in a quicker manner and it references that in less than a minute. So it's an improved method, right? But it's also improving the computer system because it's not just going on guessing in a historical database. It's going on what the user is subjectively feeling. Do these claims cover any product or service? Like restaurants? Shoes? Could it be a dating app too? It's primarily in the... These are the attributes I like and this is what I'm looking for. Certainly, that could be contemplated, but within this patent application, it contemplates as exemplary embodiments, food-related applications. But yes, I think the particular claim language talks about objects of interest. Perhaps other things like shoes or dating partners could be considered objects of interest. What's the best case that supports your side? The best case for our side is InFish. And the reason for that is because in InFish, this court found that improvements to the database ultimately led to improvements in speed and computation. That's different than some of the other case law that just says general speed, efficiency, improvements of a computer are not patentable. But in InFish, there were specific changes to portions of the computer that then led to computer improvements. We would analogize that here to the subjective intent that is injected into this algorithm, into this computer process by the user-human interaction speeds up that process, speeds up the computing. And so it's not just merely implementing this on a computer that makes it faster, it's interacting with the human for their subjective fleeting intent to help find them what it is they want in the current moment. And with that, I'll reserve my time for rebuttal. We will save it for you. Was it Mr. Rage-Plessis? Yes, Your Honor, Rage-Plessis for the appellee, SNAP. Good morning, Your Honors, and may it please the Court. The representative claims of the patents in suit here do not purport to improve computer functionality or solve any problems specific to the Internet. They merely use generic computer devices as tools to perform a basic economic practice of presenting a product to a potential customer, receiving feedback, positive or negative, and using that feedback to select another product to present. And unlike in InFish, for example, there is no factual allegation on the face of the pleadings in the complaint or in the specification that the claims here add any inventive concept beyond the abstract realm, that any of the elements in the claims are improving the technology or the computer itself. The only real dispute that AskSydney raised and preserved before the District Court is whether the Court had to defer to an examiner's notice of allowance at Alice Step 2. And this Court's precedent is very clear that the answer is no. Sanderling v. SNAP, which also affirmed a Rule 12 dismissal, squarely controls and holds that courts are not required to defer. What's an inventive concept in the context of claims like this? That sounds like 103. So, Your Honor, I don't think that it is a 103 determination. The inventive concept inquiry here is asking whether this claim is even purportedly directed in the first instance to any type of technical advance. And I think it goes to Judge Chen's question. What's a technical advance with respect to a process controlled by a computer? So, changing the voltage inside the computer or adding condensers, resistors, or is this just software passing information back and forth? This claim is certainly only directed to software, Your Honor. In fact, the specification admits that conventional computers can be used to carry out this method in Column 6. All of the computer devices that are mentioned are conventional. Now, certainly there are some cases where software can have a benefit to the computer itself. It could make the computer run more efficiently or faster or provide a new form of data compression or improvement. But here, none of the computer elements recited in the claim are being improved by the recited method. The method could have been rewritten without any computer-implemented steps. They could have claimed a detailed mathematical algorithm for predicting the intent or preference of a customer, even with more detail than in the 76. Would that have been patent eligible? No, Your Honor, it would not. Then I don't understand your point, then. My point is simply that the alleged advance here, as far as some type of algorithm that is allegedly determining a customer's preferences more accurately, that is an improvement in the abstract realm. Are you saying all search engines are patent ineligible? No, Your Honor, because a search engine could potentially have aspects to it that solve problems specific to the Internet. But in this instance, it's not a search engine. It is simply a method of iteratively showing a customer, sequentially, one potential object at a time, and using that feedback to calculate a preference for the customer. It could be done without a computer. It could be done on paper. And certainly that might take longer. That might be less efficient and not as fast as doing it on a computer. But that is exactly the type of generic speed and efficiency benefits that this Court has repeatedly held do not create a patent-eligible improvement, for example, in cases like Custom Media v. Dish. And it's the same reason that an improved mathematical algorithm for calculating financial risk in SAP v. Investpick also was not patent-eligible. Yes, there were some generic computer components that were used to perform the calculations in that case. But the alleged advance was an advance in the abstract realm. Likewise here, the alleged advance, the only alleged inventive concept here, is an improvement in the abstract realm of marketing. This may well be a better way to market something to a customer than to rely solely on history alone, but that isn't improving. I guess a different way of saying it is that this invention is a better search engine. And so I guess part of the concern is that your view might be that no matter how many specific set of rules are recited in the claim in order to accomplish an improved search result, it's never going to be good enough, in your view, in terms of patent eligibility. I don't think the Court has to go that far to affirm this judgment, Your Honor, because this isn't a situation where there are any allegations on the face of the pleadings that any of these elements are improving some sort of technical problem with a search engine, for example. In fact, on the face of the patent itself, the patent only addresses two problems. This is a column one of the specification, and neither of those problems is rooted in computer technology or the Internet. The first problem is the allegation that simply using historical information about a user, for example, their past purchasing history, may not reflect what a user currently wants. That's the first problem recited in the patent. But that's not a problem unique to the Internet or to computer networks. It's the same problem that exists whenever a salesperson tries to infer what a customer may want based on historical information about the customer. The customer walks into a store, has been there before, and the salesperson may use the past purchasing history of the customer to recommend a product. But that may not be what the customer wants in that moment. The solution is simply to get feedback from the customer and offer a different product based on that feedback. That's the solution. Neither the solution nor the problem is unique to computer technology, and it's not improving any of the computer devices themselves. And the other alleged problem is that a customer may not even know what they want, and they need to have their senses inspired or provoked. That's at column one, lines 48 to 53. Again, that's not a problem unique to computer technology. A customer who walks into a store may not know what they want either, but a shrewd salesperson will still know to present different options and to show the customer different options until they arrive at something they want. Again, neither the problem nor the solution are unique to computers. And the only alleged benefit, again, in the specification to performing this method on a machine or a computer at all is the benefit that's recited at column five, line 31 to 41, which simply says that a machine is needed to help the human arrive at a recommendation quickly. That's the benefit that counsel quoted. And that is simply the generic speed and efficiency improvement that applies and is inherent to performing any method on a computer. Yes, it may be faster to do it on a computer, but no, it is not improving the computer itself, and there is no allegation on the face of the pleadings that it is doing so. I do want to address, too, that the allegation that the district court here didn't consider the presumption of validity. In fact, the district court did explicitly apply the presumption of validity at A10, lines 13 through 16. The district court expressly referenced the presumption of validity and concluded we had carried our burden. The determination of eligibility is itself de novo, and therefore what the examiner may have found or what the Western District of Texas had found is certainly not controlling on this court or the California court, as Judge Lurie pointed out. And whether a shoe salesperson would perform the method in exactly the same way every time is really not relevant here, because that type of novelty is really only addressing steps that are entirely in the abstract realm and for which there is no allegation that those steps are improving the computer implemented method and how the computer itself functions in any way with respect to hardware or software. If there are no further questions, we would ask the court to affirm. Thank you. Thank you, counsel. Mr. Lund has some rebuttal time if he wishes to use it. Thank you, Your Honor. I just quickly want to address two points that just came up, or one point that came up, and that's with your question with respect to the search engine. The search engine, just like your example with asking your wife what to eat, is a user just picking from a finite list of choices. And search engines do that through a number of different ways by trying to present things that are better. But our invention here is not just listing out choices. The computer system is making inferences based on ingredients. And it's trying to do that to make recommendations so that it captures the user's fleeting and subjective desires at the moment. And just as an example of some of those inferences that are made, for example, in column 10 of the 786 patent, it talks about the system tracking the usage of the tag Chinese with the tag rice, in addition to others liking images that are both tagged with Chinese and tagged with rice. So, for example, in our invention, if you ask, do you want Chinese food, the system can then take that association and say, if the answer is no, then perhaps take out also things that go with rice and suggest something that doesn't have rice, like Italian food, for example. And so the point there is just that... Well, yes, you are correct, Your Honor, depending on the dish. So the point here is that this system is not just presenting lists of options and asking to choose. It's making inferences, it's using a database, and it's using the user's subjective intent at the moment to try and make the recommendation that captures what it is that the user wants. And it does this in a way that is not just generic speed increases. We're not just doing it on a computer because it makes it faster. The computer is working in tandem with the human, and that's captured in the patent. It says specifically there's a human component to this and a computer component to this, and they're working together to help find the recommendation that suits the user's need in a quick manner in preferably under a minute. And if Your Honors have any further questions, that was my last point. Thank you.